Good morning again. Madam Clerk, we'll go to the next case. Mayor of the Council, please approach. And identify yourself and about how much time you'll take. Hi, my name is Jean Park and I represent Edward Dunemore. I'll need about 15 minutes and I'd like to reserve a few minutes in rebuttal. Thank you. Good morning, Your Honors. My name is Mary Hodson-Buehler. I represent the people of the State of Illinois and I anticipate my argument being less than 15 minutes. Thank you very much. Ms. Park. In this appeal, Mr. Dunemore challenged his probation revocation and the assessment of three fees. Today, I'll be focusing my argument on the probation revocation issue. And I'll also be addressing this court's request for supplemental briefing on People v. Aguilar. With regard to the probation revocation, as I understand it, the State stated in their supplemental brief, page 2, as a result of the Aguilar decision, defendant's probation revocation and underlying conviction on count two are void. So is that an issue? Whether the underlying count is void? No, they say it. Defendant's probation revocation, underlying conviction on count two are void. And they say the question now before us is the reinstatement of the lowly pressed charges. Well, in regards to that question, I think this case is a case where there's a lot of unique facts. As I said, the only issues that Mr. Dunemore raised were his probation revocation and the assessment of three fees. And in this case, the underlying conviction was for AUW, but Mr. Dunemore did not appeal his guilty plea and he never tried to withdraw his plea. And in fact, he's already completely done with his sentence where as of this August, it's been discharged. So given that the underlying count in people v. Aguilar was found to be unconstitutional, that's why this Court requested supplemental briefing. But I would argue that based on these unique facts, this Court actually doesn't need to reach people v. Aguilar because of the situation here where actually this Court can meet its duty just by ruling on the issues raised in opening brief and leaving the AUW conviction as is. The reason why we requested that that count be vacated as well as the subsequent probation revocation and the state also agreed to that was because this Court had actually asked us to brief on that issue of people v. Aguilar. Well, would your position be that since the defendant has served his sentence on the underlying charge, right? Yes. The state cannot reinstate the counts that were dollied? That they can't reinstate the counts? Right. I mean, I think we're not at that point quite yet. I think based... Well, when you say we're not at that point, what happens if we decide we're at that point? If you decide to reach people v. Aguilar and decide to vacate the counts? Well, don't we have to? I mean, we have to follow the Supreme Court. The Supreme Court has told us that we can't allow that. It's void. It's as if it never happened. So how can we allow that to stand? You can allow it to stand. Again, based on... We can? Yes, you can, based on these specific facts. I mean, this is the type of situation where... What specific fact do you say makes this so different? What makes it so different is that Mr. Dunmore didn't appeal his guilty plea or try to withdraw it in any way. In the opening brief, the only issue he had was with his probation revocation. And because he's already completely served the time on it, you can leave that count as is. I mean, it would be as if every time that the Supreme Court were to find a count void or a statute void and there's arguably thousands of defendants who have pled guilty to that count, it doesn't make sense that if they've already served their sentence, they don't have an issue with that count for them to be seeking out those people and bringing them back into court in order to invalidate their plea. I mean, this is a different situation where he never had a problem with his plea. He's done with his plea. And even addressing the cases that the state cited in their supplemental brief regarding reinstating the charges and double jeopardy and so forth, even with those cases and every single one of those cases, it was the defendant that had actually initiated some type of proceedings against his plea. And so that's how it ended up coming back to court. Give me a case that supports your position. A case that supports my position where this doesn't have to be done? Yes. Well, this is actually a case that was not cited in the brief. But upon further research, there is a case in People v. Turner in the Fifth District. And basically in that case, it's very similar to this case, where what happened was Turner pled guilty to two counts of predatory criminal sexual assault, and he went to prison for it. Right before he was about to be released, the Supreme Court actually invalidated the count that he had pled guilty on in People v. Johnson. That's what happened, similar to People v. Aguilar, where they invalidated the count that he pled guilty on. And what the Fifth District Appellate Court found was that exactly what I was saying is that in a situation where the defendant already served his time, didn't initiate any proceedings against his plea, and he just basically took no action against it, what he pled guilty to at the time was a valid count. And that conviction still remains intact. And so since he didn't take action on it, actually the Appellate Court pretty much admonished the prosecutor by saying that you can't just unilaterally decide to bring back these counts that were no lead for a client who didn't initiate any proceedings against the plea and is quite happy with it, is okay with it. So I would just argue that this, just given the facts of this case, where on opening brief, in the opening brief, Mr. Dunmore could have arguably raised an issue with his plea, but when we spoke at that time, he didn't have any desire to do so. And the reason why was because at that time he'd already served his two years and he was currently out on parole. And the last thing that Mr. Dunmore wanted to do was have to go back to court and deal with this AUW conviction. However, if he were to only deal with the probation revocation issue, that would mean he doesn't have to come back to court. He could deal with this all, you know, in terms of just correcting the record or with his fees, correcting the fines and fees order. And that's all that it would entail. And this isn't a situation where, you know, we're asking for a windfall of any sort. It's just the situation where his AUW conviction was valid at the time, he served his time, he doesn't have any problems against it, and it can stand. And this court should just rule on the probation revocation issue and the fees issue. Now, going back to the probation revocation issue, this is a situation where at the probation revocation hearing, the state only presented one witness, Officer Abdel-Majid, who testified that to his knowledge 10 of the 33 items tested positive for 1.2 grams of cocaine. Isn't that pretty common in probation revocation proceedings? Don't defendants, given that it's really civil in nature and the burden of proof is less, often stipulate to the fact that there was a controlled substance? Your Honor, you're correct. A lot of times there's a stipulation that's entered as to the point of custody and that could arguably meet the foundation requirements. But in this case, there was actually no stipulation. There's no stipulation. But there was no objection either. There was no objection. But at the same time, in this situation, I would argue that this is the situation where there was a complete breakdown in the chain of custody. I mean, at a minimum, you have to show that the items that were recovered match the items that were tested. But the purpose of an objection then is to say, Judge, state hasn't established chain of custody, and the state then has an opportunity to do that. In the absence of an objection, what opportunity is there to cure the error? Yes, there was an objection here. But at the same time, I believe we still have a sufficiency of evidence argument, as well as, as I said, based on the complete breakdown here in the chain of custody, we would argue that it can be reviewed still under plain error. I mean, we have a situation here where the officer just said that, to his knowledge, 10 of these 33 items were tested, and they tested positive for 1.2 grams of cocaine. We really have no idea as to where that knowledge came from. We don't know who tested the items. He didn't observe the testing. He didn't say who tested the items. He didn't rely on any lab reports. I mean, there's just a breakdown here. We don't even know if the items that were recovered are the same as the items that were tested. And as I said, there's no stipulation here either as to the chain of custody. And the state could have easily done that, and I don't think that at this point we should excuse their mistake. And as to the question of the preponderance of the evidence standard being lower, it is a lower standard. But at the same time, there has to be an adequate foundation. There has to be some sort of scientific testing to say, especially in a case of a controlled substance, it can't be enough that an officer says it looks like drugs, or to my knowledge, this is the testing that happened. It is a lesser protection, but I would argue that the probationers are still entitled to due process and a fair determination that, in fact, the substance that was recovered is a controlled substance. And based on that, we would argue that his probation revocation should be reversed. And just coming back to just in general with Aguilar, just to be clear, what we're asking for is that this court just rule on the issues that were raised in the opening brief. Given the facts here, you can, in fact, just leave it as is. And this just isn't the case where you have to reach Aguilar. Like I said, you'd be taking someone who's never had an issue with this plea, who's at home, and forcing him to come back to court to deal with this AUW conviction that he doesn't want to withdraw in any way. Okay. Well, what happened tomorrow? We rule on the issue that you brought up in the appeal. And then he later decides, oh, now I want to have that taken off the expunge from the record, because it's a void. I mean, I guess that would be up to him if he chooses to do so. I guess I can't say what he plans to do in the future. I know that right now he's okay with it as is and would just like to move on with his life, honestly, and just rule on that probation revocation issue, get that off his record. And, I mean, I don't know. I guess we would just say that if he does that, then the whole issue with regard to noly-prate claims or counts would be, at that time, an issue. Yes, at that time it would be an issue. I mean, I can't say that right now I'm not conceding that it may come back. But, you know, that's something that can be argued in the trial court. There's so much that can be done there in terms of that issue. But for today we would just be asking that you reverse his probation revocation because the state just did not prove that it's a controlled substance and also to rule on the fees. Thank you. Excuse me. Oh, yes. Did anybody ever find the order of protection that he had against his girlfriend? The order of protection he had against his girlfriend? I believe that was. Because that was the reason that the police went into that apartment, and I'm wondering whether or not they had order of protection even authorized them to do that. Oh, I mean, I believe it was a state's exhibit, but I'm not sure if we actually have that in the record. It's not in the record. I just wondered if anybody knew where it was. Not that I know of at this time. Thank you. Good morning again, Your Honors. May it please the Court. Mary Hodson-Buehler on behalf of the state. In this case, the defendant pled guilty to count 2, aggravated UUW. In exchange for that plea of guilty, he was sentenced to 18 months' probation, the state NALI count 1, UUW, and the remaining five counts, AAUW. After the defendant pled guilty, he first violated his probation when he violated an order of protection. The state NALI'd that violation and allowed him to continue on his probation on the other AAUW, the initial charge that he pled guilty to. Subsequent to that, the defendant again violated his probation, and that is the subject of the initial appeal when defendant appealed this case. However, in light of People v. Aguilar, it's the people's position that defendants' plea of guilty to the AAUW as well as his probation revocation are void. But you have a case where the party who would normally make such assertion that this is a void conviction is saying, I don't want to because I'm done with it. I've served my time. I don't want to challenge that conviction. Do you have any cases like that? No, and with regard to the People v. Turner case, I have not had an opportunity to review that case. But this is a situation where it's the Illinois Supreme Court has said, all right, the conviction that he pled guilty on is no longer valid. And the state appreciates that the defendant wants to be done with it. But when you go forward, it won't be a conviction on his record. It will say it's a void. It's a void conviction. But it doesn't. He's not appealing that. He is appealing the probation revocation. Correct. But not the AAUW. So that remains on his record until such time as he decides that, if he wants to, to do something about that. And that's not before us. So why should we enter into any kind of analysis with regard to where you want us to go? Right. When it's his appeal, and he's not raising it. Correct. But his appeal was for the probation revocation because all the other charges were not only passed. So as far as he was concerned, those were done. But that was a deal. That was a deal. It's an agreement between state and him. He did what he said he would do. And he's not asking us to do anything with regard to count one. It's only the probation that he's. That's correct. But had he come back and said, wait a second, my first count, I didn't really need to plead guilty on it, then we'd be in a situation where we'd have to admit, all right, I didn't do that. Right. Correct. Appealing his probation revocation. Can you tell us about that? Well, with regard to the probation revocation, as you all well know, it's a preponderance of evidence standard. And the evidence clearly supported the officer testified that he went to a call of a domestic disturbance, although it did occur in a parking lot between the defendant and his ex-girlfriend. At a different address. At a different address. Than where the drugs were. Exactly. And the defendant said, hey, I have an order of protection against her. And the young lady said, all right, can you go with me? Can you go with me to the building where my clothes are? And we don't have a copy of the order of protection that he had, so we don't know whether or not she was entitled to go back and retrieve her personal property. Exactly. But the officers, realizing that, you know, domestic violence, those can be escalating circumstances, they knew, let's get the stuff out of there. Counsel, the domestic violence wasn't at the address where the baby shoes were. Correct. The baby shoes were someplace else. The defendant did not voice any type of objection to the officers going to go and retrieve the belongings. As a matter of fact, and I can be corrected if I'm wrong, but the defendant didn't object, and as a matter of fact, he acquiesced and said the apartment's over there. So when the officers get to the apartment, they receive a hostile environment. People are spitting at them, throwing things at them. So they go upstairs to the apartment, to the bedroom that the ex-girlfriend had said was the defendant's, and they go in there and that's where they see. Is the door locked? They have to break down the door. To the bedroom? Not to the bedroom, to the apartment. My understanding is from the record that the door was unlocked. Were there other people in the bedroom? Not in the bedroom, but his father was in the unit. Isn't the bedroom where the window was that the people were throwing things at the cops from? That's what the evidence did show. So there were other people in that bedroom. But now when the officers went there, the people were not there. But there were people who had access to that bedroom in the apartment. Right. While the defendant wasn't there. But what was in the box that the officer did see, in addition to the suspect crack cocaine, it was also his probation card as well as an I-bond slip. Okay, let's talk about that suspect crack cocaine. So the cops pick it up, they inventory it, they take it to the police station. Then what happened? Well, the testimony was. Is there a record about what happened? The record is that this officer did keep custody and control until it was. Until he gave it to the inventory cop. Right. And then. And that's all we have, Your Honor. Isn't that a dead end? Well, I think that when you look at this officer and his testimony, he has been an officer for a long time. He's been out on the streets. He's very familiar. And to his knowledge, based on his experience, that the way that they were packaged, that they were suspect crack cocaine. Is there a test report? There's no test report. Testimony about a lab report? No, but the defendant never. Inventory number from the state police lab? No, but the defendant never objected to any of that. And the officer, Your Honor, was there to observe the testimony of the officer. The trial judge was there. Made the credibility determinations. As a matter of fact, our standard is lower than beyond a reasonable doubt. Well, what if the testimony, the officer's testimony was, I've been an officer for X number of years. I see a shoebox with 33 knotted plastic baggies in it with a rock-like substance. I think that's crack cocaine. Is that enough for a probation revocation? Well, I think that the standard is lower with a probation revocation. Is that enough? I mean, without any scientific testing of the substance introduced, the officer could just say, based on my experience, I don't know what 33 knotted bags of a rock-like substance would be if not crack cocaine. Is that enough? I'll tell you, as a state's attorney, I wish that we had more evidence. And I'll be candid about that. I wish we had more evidence. However, again, we're not there where the trial judge was observing all this. We're not seeing how the officer's testimony. But the credibility of the officer is unrelated to his testimony that, to the best of my knowledge, this was tested and 10 tested positive. That's not really a credibility issue. It's not that we don't believe him. Again, we have to go to the officers who are on the street who handle these on a day-to-day basis, what they see, or something different than what we would see. But that's not the point. The point is, okay, maybe the officer has been an officer for 15, 20 years, and he has seen hundreds of crack cocaine cases, and he recognizes crack cocaine, and he is competent in his own ability. That's not what we need here. It's not the officer's ability to tell us that he thought it was crack cocaine. It's his ability, it's someone's ability to tell us that, in fact, this inventory of material matches up with what the lab tested, and the test indicates that it was crack cocaine. And that, I think, is what's bothering me. I have a different thing that's bothering me. He had to get an order of protection against her. You may not be aware that I had 10,000 emergency order of protection cases, and this came up all the time where a guy's on probation. He has a girlfriend that he's having a fight with. He comes in and gets an order of protection against her to keep her away from him, specifically for this reason, because he doesn't want to get in trouble with the cops. Now, she had access to that bedroom. She had access to his belongings in that bedroom. We don't know what mischief she was up to because we don't have the petition from the order of protection, and we don't have the order of protection. So I'm deeply concerned that this is one of those cases where, in fact, we don't know what happened. And because we don't know what happened, and there are two players in this, both of whom had access to that room along with other people in the apartment, the officer's testimony notwithstanding, we don't know who put his cards in that box, and we don't know who put the alleged crack cocaine in that box, and we don't know who put that box in his room. And there are just too many question marks here. But you're right. But I will tell you, at the time of the incident of the original AAUW, he did have an order of protection. That was one of the bases for several of the AAUW counts. She had an order of protection against him. He had an order of protection. And then he got one against her. Correct. And we don't know the time. But I will say February 6, 2010, when this incident occurred, he had an order of protection against him when he was found in possession of a firearm. So he had a pending order of protection. I don't know the duration of it, but this subsequent offense, when we had the violation of the hearing that happened two years later, so he initially had an order of protection. And like you said, you've seen it all. I was in domestic violence court. I see it when it's ñ I don't want to say it's a game, but one comes in, one comes in. And it's a terrible situation. It's very unique. And it is a unique situation. But, you know, our position is, and I understand your concerns with regard to the revocation probation. As I said, I wish I had more evidence. I wish I had that test result. But our position arguing before you today is that all of that is void because now we have People v. Aguilar. We have the Illinois Supreme Court saying his underlying plea of guilty is now unconstitutional. And so what the people are requesting ñ go ahead, Your Honor. Well, what you're saying is we've been saved by the bell. I mean, basically. I've been saved by the bell. Do you have any questions on the Aguilar? As you saw in my brief, we'd like you to be reinstated so we can not only process the other counts. We believe those counts are valid and we can proceed on them. Thank you very much. Thank you very much. Ms. Burke. So in regards to the state is still asking that you reach People v. Aguilar in this case and to not leave that AUW conviction as is. As I stated, I mean, it's just fundamentally unfair. It just doesn't make sense that every time the Supreme Court were to void a statute that you have to bring all these people back in. And that conviction, as I said, is still intact. And it can remain that way. And he fulfilled the benefit of his bargain. And if this Court were to reach Aguilar, we'd stand by the supplemental brief that you do vacate that count as well as the subsequent probation application. But right now, based on what he's raised in his opening brief, we just ask that you reverse his probation revocation and deal with the fees. In regards to the probation revocation, I mean, there's a lot of problems here. It is not enough to say, have an officer say that it looks like crack or it looks like I think it's drugs or so forth. I mean, I don't think you can set you don't want to set that kind of precedent here where basically even though it's a lesser standard, the state does have to show that there are reasonable protective measures to at a minimum show that the items recovered are the same as the items tested. And here you do have the officers gave an inventory number and gave a description of the items. And we have testimony up until he got to the police station. But what's missing, which is a huge part of this, is we don't know what happened to those items from the station to the lab. And a case that we cited in the reply brief is People v. Moore. And it's also a First District case where in that case, the officer, it was kind of I guess the inverse of this case, where the officer was the one that said, oh, I inventoried the item, didn't give a number or anything. But then there was a stipulation that did give the number, a stipulation of a forensic scientist who did give a number, an inventory number, and said it did test positive for cocaine. So the problem there was that the officer didn't give an inventory number, didn't give a description of the items. So, again, there's that link missing. And what the First District did there was they reversed based on insufficiency of evidence. And we have a very similar situation here. In fact, it could be worse where we don't have a stipulation. We don't know if it's even the same items. We don't know if it was tested. We don't even know if it was. We don't have any test results. No, there's no test results. Yes, we don't know who tested the items. We don't know how they were tested. We don't have lab reports. If it was tested, we just know that, to his knowledge, they were tested. And that's just not enough. We have no idea where that knowledge came from. So based on that, again, we would just argue that you reversed the probation application. Thank you very much. Ms. Hertzbuehler, do you want to respond to the People v. Turner case? I mean, I don't know. If you do respond, can you do so how many days? Probably a week. A week? And do you want to then file something in response to that if she files something? If she does. Okay. And you want another week? Sure. Okay. Thank you. Okay. We'll take a brief recess. Thank you very much for your arguments. Appreciate it. And appreciate the supplemental brief.